UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SERGIO G.,[1]

      Plaintiff,

  v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      Defendant.

Case No. 1:24-cv-4982
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Sergio G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.  PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 15, 2021, and October 13, 2021, respectively, alleging that he has been disabled since October 14, 2019. R. 96, 105–07, 252–59. The applications were denied initially and upon reconsideration. R. 128–37. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 180–99. ALJ Nicholas Cerulli held a hearing on June 5, 2023, at which Plaintiff, who was represented by a non-attorney, testified, as did a vocational expert. R. 51–87. In a decision dated July 28, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 14, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 32–45. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 18, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 10, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On February 28, 2025, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

II.  LEGAL STANDARD

A.  **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

    The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

5

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. R. 34. He was 28 years old on October 14, 2019, his alleged disability onset date. R. 44. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 34.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cognitive disorder; dissociative disorder; posttraumatic stress disorder ("PTSD"); major depressive disorder; panic disorder; and social anxiety disorder. R. 35. The ALJ also found that headaches did not constitute a medically determinable impairment. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 35–37.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels work subject to various non-exertional limitations. R. 37–43. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a server and hand packager. R. 43–44.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a package sealer, a warehouse worker, and an office

helper—existed in the national economy and could be performed by Plaintiff with this RFC. R. 44–45. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 14, 2019, his alleged disability onset date, through the date of the decision. R. 45.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and apparently asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 7; *Plaintiff's Reply Brief*, ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 9.

### IV.    DISCUSSION

Plaintiff argues, *inter alia*, that at steps three and four, the ALJ based his conclusions in large part on the mistaken belief that Plaintiff had earned an associates degree. *Plaintiff's Brief*, ECF No. 7, pp. 14–19; *Plaintiff's Reply Brief*, ECF No. 10, pp. 6, 8–10. This Court agrees.

By way of background, Plaintiff, an army veteran, fell into a coma in September 2016 after experiencing an adverse reaction (or accidental overdose) to Amitriptyline while serving in the United States military. R. 37–38, 39 ("in September 2016 the claimant presented to the emergency department with complaints related to a near-fatal overdose of tricyclic medications, as he had been recently treated with amitriptyline" and Plaintiff "insisted this overdose was not intentional but was a bad reaction to medication. However, he was hospitalized on two occasions (in September and December 2016) for suicide attempts by overdose of prescription medications"), 649–50 (reporting PTSD related to this experience). Plaintiff also suffered from,

among other things, difficulty interacting with others as reflected in his isolative tendencies, including rarely leaving house and going out at 3:00 A.M. or 4:00 A.M. to avoid people; anxiety in crowds, which he defined as two or three people; and interacting only with his providers. R. 39 (noting that Plaintiff "alleged [in his function reports] he experienced . . . heightened anxiety in the presence of others . . . isolative tendencies and difficulty . . . getting along with others[.] He alleged he had no friends or family, only interacted with doctors"); 37–38 (reporting to a consultative examiner in January 2022 that he had "anxiety in crowds" and that he "did not interact with others" and that he "felt he could not work due to his fear of dissociating at random points and trouble interacting with even two or three people. He denied getting together with friends or family members"); 38 (testifying at the hearing that he was "unable to be on a bus with others due to nervousness, sweating and trouble being in crowds" and that he had "trouble interacting with others, with him experiencing panic attacks around others; he quantified this as a few times a week" and "alleged that when in a group, he felt like he was being watched"), 40 (reporting in January 2022 during a neuropsychological examination that "he again endorsed isolative tendencies, agoraphobia . . . rarely went food shopping (due to agoraphobia)" and "endorsed feeling . . . social anxiety, paranoia, social isolation, fear of crowded situations (which he described as 2 or more people)"); 41 (reporting in January 2022 during a consultative examination that he "believes others are watching or judging him, and he reported getting anxious in crowds of as few as 2-3 people"); 42 (noting that Plaintiff "continued to live a more isolated lifestyle but did not report feeling distressed or concerned about this"); 294 (stating in a function report dated November 20, 2021, that he does not go out because "I always get nervous, feel sick, rare I'll go out at 3am–4am walk to near Wawa [convenience store] to buy food but not often" and that "I do not really go out[;] only for appointments. If I'm desperate at 3am–4am I

9

walk to Wawa[;] if I see multiple people I go back home and wait for food pantry"); 690 (noting that Plaintiff reported in January 2022 that "[i]n the past month, he left the house once to go to Wawa. He reported that he tries to go to Wawa around 2am so that he does not have to interact with other people. He stated that he is frightened of crowded situations, which he described as '2 or more people'").

At step two, as noted, the ALJ determined that Plaintiff suffered the severe impairments of cognitive disorder; dissociative disorder; PTSD; major depressive disorder; panic disorder; and social anxiety disorder. R. 35. The ALJ determined at step three[4] that Plaintiff had only moderate limitations in the four areas of functioning under paragraph B of Listings 12.02 (neurocognitive disorders), 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).[5] In making this determination, the ALJ

---

[4] At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120).

[5] To meet these listings, a claimant must meet the paragraph A criteria and either the paragraph B or paragraph C criteria of the listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.03, 12.04, 12.06, or 12.15. The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two, of the following four mental functional areas: understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. at §§ 12.00A2b, 12.02B, 12.03B, 12.04B, 12.06B, 12.15B. A "moderate" limitation means that the claimant has a "fair" ability to function independently, appropriately, and effectively and on a sustained basis in a specified area. *Id*. at §12.00F2c. A "marked" limitation means that the claimant is seriously limited the ability to function independently, appropriately, and effectively and on a sustained basis in a specified area. § 12.00F2d. An "extreme" limitation means that the claimant is unable to function independently, appropriately, and effectively on a sustained basis in a specified area. *Id*. at §12.00F2e.

emphasized Plaintiff's ability to earn an associates degree despite his other functional limitations:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant reported difficulty concentrating over 2-3 minutes, completing tasks, understanding, following instructions and with memory (Exhibits 3E, 9E). However, he also admitted he could shop in stores, prepare simple meals, watch television, go out alone, use a computer, make appointments, do some cleaning, handle his own bills, and handle his personal care needs (Exhibits 3E, 9E, 6F). The record also reveals *he was able to earn an associates's degree despite his symptoms* and he admitted in October 2019 that he had multiple ongoing projects and was able to focus on the tasks (*Exhibit 3F* [R. 451–536]). However, there is evidence of trouble focusing due to his dissociative episodes (Exhibits 4F, 8F). Mental status examinations have referenced some memory problems and tangentiality (Exhibits 3F, 4F, 8F). Though intelligence testing in January 2022 raised concerns regarding test validity, the claimant did not demonstrate impairment in attention, working memory or verbal fluency at that time. January 2022 consultative examination revealed variable memory, ranging from fairly good remote memory to somewhat poor immediate retention and recall (Exhibit 6F). Memory problems continued to be noted through 2022 and he required redirection as recently as May 2023 (Exhibits 10F, 11F). Considering the foregoing, the undersigned finds moderate restriction in this area.
>
> In interacting with others, the claimant has a moderate limitation. The claimant alleged he had heightened anxiety when around others, even in groups as small as 2 others, with resultant isolative tendencies and trouble getting along with others (Exhibits 3E, 9E). He alleged he had no friends or family. He also reported he was unable to take public transportation, in part due to his anxiety, and had panic attacks at his last job, which resulted in him being sent home. He reportedly felt like he was being watched when out in public. Nonetheless, he admitted he could go to the convenience store when it was less crowded, usually get along satisfactorily with others and handle his personal care needs (Exhibits 3E, 9E, 6F). Dissociative episodes and heightened anxiety were repeatedly mentioned in mental health treatment notes and examination reports (Exhibits 3F, 4F, 6F, 8F). However, he consistently interacted appropriately with examining and treating staff and was well groomed. Considering his well-documented anxiety and dissociative symptoms, but in light of his residual abilities and appropriate interactions, the undersigned finds moderate limitation in this area.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant reported difficulty concentrating over 2-3 minutes, completing tasks, understanding and following instructions (Exhibits 3E, 9E). However, he also admitted he could shop in stores, prepare simple meals, watch television, go out alone, use a computer, make appointments, do some cleaning, handle his own bills and handle his personal care needs (Exhibits 3E, 9E,

11

> 6F). The record also reveals *he was able to earn an associates's degree despite his symptoms* and he admitted in October 2019 that he had multiple ongoing projects and was able to focus on the tasks, though, as discussed above, his dissociative episodes resulted in distractibility (*Exhibits 3F*, 4F, 8F). Mental status examinations have referenced logical thought processes but with reference at times to poor cognition. He had fair concentration in a January 2022 examination, with him able to perform serial 7s at average speed and with three errors, and he could spell WORLD forward and backwards (Exhibit 6F). Considering the foregoing, the undersigned finds moderate restriction in this area.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. As discussed above and further below, the claimant reported significant issues with anxiety, PTSD and dissociative episodes that have interfered with his ability to go out in public and interact with others (Exhibits 3E, 9E, 6F). He also endorsed a history of auditory hallucinations and prior suicidal ideation. Nonetheless, *he was able to complete his college coursework*, worked for a period at Amazon, handles his personal care needs and lives independently without significant difficulty (*Exhibits 3F*, 4F, 6F, 8F, 10F).

R. 35–36 (emphasis added). When crafting the RFC at step four,[6] the ALJ similarly relied on Plaintiff's ability to earn an associates degree. R. 38 ("Additionally, the claimant has had merely conservative mental health treatment and consistently declined any medications other than hydroxyzine and trazodone and was able to attend college and earn a degree during the pertinent period, as discussed below."), 41 ("[H]e reported that he had graduated with an associates's degree."), 43 ("Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence, his

---

[6] The ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can have frequent exposure to hazards such as unprotected heights and moving machinery; is limited to simple work involving routine and repetitive tasks; with occasional use of judgment; occasional changes in the work setting; no quota or production rate based work but rather goal oriented work; occasional interaction with coworkers and supervisors; and no interaction with the public.

R. 37.

12

residual daily activities, his ability to attend and complete college courses, his conservative treatment history (including his declining of numerous psychotropic medications), his mental status examinations and the opinion evidence, as set forth above.").

In challenging these findings at steps three and four, Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's conclusion that Plaintiff had earned an associates degree. *Plaintiff's Brief*, ECF No. 7, pp. 14–19; *Plaintiff's Reply Brief*, ECF No. 10, pp. 6, 8–10. Plaintiff specifically argues that the ALJ's reliance on "Exhibit 3F" does not establish that Plaintiff had actually earned such a degree; rather, that exhibit reflects only that Plaintiff planned to graduate in the future with that degree. *Plaintiff's Brief*, ECF No. 7, p. 14 (citing R. 35, 525); *see also* R. 35–36 (citing Exhibit 3F for the proposition that Plaintiff had earned an associates degree and "was able to complete his college coursework"), 525 (reflecting progress note dated October 7, 2019, Exhibit 3F/75, in which "Veteran states that he does not have career goal. He *will graduate* in March 2020 with an associates's degree") (emphasis added). Plaintiff also points to his testimony at the administrative hearing that he had completed high school and insists that he never testified that he had earned a college degree. *Plaintiff's Brief*, ECF No. 7, p. 14; *see also* R. 62–63 ("Q: . . . how far did you go in school?  A: I completed high school.").

The Commissioner states that "[t]he ALJ also found it persuasive that despite Plaintiff's symptoms, he earned his associates degree during the relevant period (Tr. 674). According to the Commissioner, the ALJ permissibly relied, in part, on this factor because the record contains evidence that the ALJ had in fact earned his associates degree (*See e.g.*, Tr. 840) ('Veteran states that he has graduated with his associates degree in literature arts')." *Defendant's Brief*, ECF No.

13

9, p. 10. In reply, Plaintiff concedes that the record reflects this statement, but he insists that he never earned his degree. *Plaintiff's Reply Brief*, ECF No. 10, pp. 8–11 (citing, *inter alia*, R. 840).

  This issue requires remand. As set forth above, there is an apparent conflict in the evidence: When asked how far he went in school, Plaintiff testified that he completed high school, R. 62–63; yet elsewhere in the record, Plaintiff reported to a provider that he had graduated with an associates degree, R. 840. It is true that, as the trier of fact, the ALJ has the duty to resolve conflicting evidence. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005). However, in this case, the ALJ does not even acknowledge this conflict; he wholly fails to recognize Plaintiff's hearing testimony that he only completed high school. *See generally* R. 32–45. Accordingly, it is unclear why the ALJ credited one portion of the record while rejecting a conflicting portion. Moreover, as detailed above, the ALJ relied in large part on Plaintiff's purported ability to earn an associates degree when considering three of the paragraph B functional areas (understanding, remembering, or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself) and went on to consider this factor when crafting the RFC. R. 35–36, 38–39, 43. Without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's paragraph B findings at step three and the RFC determination at step four. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection

were improper.") (internal citation omitted); *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings."); *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

    This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of the paragraph B criteria at step three and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the paragraph B criteria at step three and the RFC determination, the Court does not consider those assertions.

In addition, the Court notes that Plaintiff refers to evidence that was not before the ALJ. *See Plaintiff's Brief*, ECF No. 7, p. 14 (citing to Plaintiff's *pro se* appeal to the Appeals Council, which states, *inter alia*, that "[o]ne of the conclusions on the judge is that I had completed college courses but I did not complete college I failed many of the classes and dropped out"), which appears at R. 248); *Plaintiff's Reply Brief*, ECF No. 10, p. 9 (citing "Appendix 1" and "Appendix 2"); *see also* ECF Nos. 10-1 (containing email exchange between Plaintiff and his counsel from August 11, 2024), 10-2 (containing Plaintiff's college transcript dated June 17, 2024). That evidence is not properly before the Court and therefore was not considered by the Court. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (finding it axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence").

1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

VI. **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 24, 2025                        *s/Norah McCann King*
                                                NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE